NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  07a0006n.06
Filed:  January 5, 2007

No. 04-1954 / 2526

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| *Plaintiff - Appellee* | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| **v.** | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| **Rogelio Perez-Arellano** | ) | |
| | ) | **OPINION** |
| *Defendant - Appellant* | ) | |

**BEFORE:   GIBBONS, MCKEAGUE, Circuit Judges; and BUNNING, District Judge**[*]

**BUNNING, District Judge.**  Defendant-Appellant Rogelio Perez-Arellano appeals the sentence imposed upon his conviction for illegal re-entry, in violation of 8 U.S.C. § 1326, as unreasonable (Case No. 04-2526). Perez-Arellano also appeals, as plainly unreasonable,  the revocation of his supervised release and imposition of an additional term of imprisonment (Case No. 04-1954).  For the reasons set forth below, we **AFFIRM**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2001, Perez-Arellano was convicted in the United States District Court for the Southern District of Texas of "[b]eing found in the U.S. after previous deportation

_____

[*] The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

subsequent to a conviction of an aggravated felony," in violation of 8 U.S.C. § 1326(a) and (b). He was sentenced to serve eighteen months of imprisonment followed by two years of supervised release with the special condition that "[i]f deported, [Perez-Arellano] is not to re-enter the United States illegally." Upon completion of his eighteen-month sentence, Perez-Arellano began serving his term of supervised release on February 12, 2002, and was subsequently deported. However, in August of 2002, Perez-Arellano returned to the United States after having been previously removed on four separate occasions.

Shortly after his illegal re-entry, in the latter half of 2003 and the beginning of 2004, Perez-Arellano was arrested in Michigan and Illinois for several drug and DUI-related offenses, respectively. Contemporaneously, Perez-Arellano was charged, on January 30, 2004, in the Western District of Michigan, with illegal re-entry following removal for a conviction on an aggravated felony and violation of his supervised release for the commission of the named offenses. Although the supervised release charge was originally brought in the Southern District of Texas, jurisdiction was subsequently transferred to the United States District Court for the Western District of Michigan.

Perez-Arellano pled guilty to both illegally re-entering the United States after having been deported following an aggravated felony conviction and to violations of the terms of his supervised release,[1] although he reserved the right to appeal his impending sentence

---

[1] As to the supervised release violations, Perez-Arellano was charged with four independent violations of the terms of his supervised release. Perez-Arellano admitted to the third and fourth violations, both pertaining to the illegal re-entry. At the final supervised release hearing held on July 14, 2004, the district court also found Perez-Arellano guilty of release violation two, pertaining to the new drug charge out of Michigan, in addition to Perez-Arellano's prior admission of violations three and four. After hearing from two government witnesses, the court held that the government did not prove that Perez-Arellano had committed the DUI offenses that were the subject of violation one.

if extra points were assigned under the Sentencing Guidelines for having been previously convicted of an aggravated felony.

At sentencing, the district court had the unenviable task of deciphering the status of sentencing law amidst pervasive confusion among the Circuits post-*Blakely* and pre-*Booker*. Nevertheless, the court decided to utilize the Sentencing Guidelines as merely advisory, which was the ultimate resolution handed down by the Supreme Court months later. The district court stated: "While it's tempting to pass alternative sentences, I'm not going to take that temptation; instead I'm going to use the guidelines as a guide in this case." (J.A. 90). Based on this procedural determination, as well as the court's finding that the underlying state drug conviction did not constitute an aggravated felony for sentencing purposes, the final offense level for the illegal re-entry conviction was reduced from a level 13 to a level 9 (criminal history category (IV)), which produced an advisory range of 12-18 months imprisonment. The court sentenced Perez-Arellano to serve 18 months of imprisonment followed by three years of supervised release.

On the supervised release violations, the district court sentenced Perez-Arellano to serve 24 months of imprisonment, specifically highlighting his lack of respect for the law:

> The Court is satisfied that Mr. Perez, if that's his name, does not comply with the immigration laws of this country or have any regard for them whatsoever. Whether he is involved in drugs, I have no idea whatsoever. I'm convinced he was involved in drugs, marijuana, in [Michigan]. Aside from that, I have no idea what his background is in drugs, nor do I know whether he is in any way addicted.
> The Court has the benefit of a previous record of this defendant in the . . . presentence report, and the presentence report in its entirety, as well as the petition and testimony that was heard in this courtroom. The Court believes that the defendant is not amenable to the comply with the laws of the United States.

(J.A. 88-89). The sentences for both the illegal re-entry and supervised release violations were ordered to run consecutively.

Perez-Arellano filed timely appeals in both cases, which were consolidated for briefing purposes.

## II. ANALYSIS

### A. Sentence for Supervised Release Violations

This court "will affirm a district court's sentence of imprisonment upon revocation of supervised release if it shows consideration of the relevant statutory factors and is not plainly unreasonable." *United States v. McClellan*, 164 F.3d 308, 309 (6th Cir. 1999). Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements "are merely advisory" and need only be considered by the district court before sentence is imposed. *Id.* at 310; *see also United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998).

In addition to the policy statements, the sentence imposed by the district court "must reflect consideration of the factors listed in 18 U.S.C. § 3553." *McClellan*, 164 F.3d at 310; *see also* 18 U.S.C. § 3583(e); *Washington*, 147 F.3d at 491. The § 3553(a) factors that are to be considered by a district court when imposing a sentence include, in pertinent part:

> 1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 2) the need for the sentence imposed to reflect the seriousness of the offense and provide appropriate punishment, deter future criminal conduct, protect the public, and provide the defendant with necessary rehabilitation or other correctional treatment;
> 3) the kinds of sentences available;
> 4) any guideline range for sentencing;

5) any guideline policy statements;
6) the need to avoid unwarranted sentence disparities among defendants; and
7) the need for restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). The district court need not recite any "'magic words' explaining whether and how it considered the policy statements contained in the Sentencing Guidelines, or how it weighed the factors set out in 18 U.S.C. § 3553." *McClellan*, 164 F.3d at 310. All that is required is a general statement of the district court's reasons sufficient to permit "an informed appellate review." *Id.*

The Supervised Release Violation Report (SRVR) alleged that Perez-Arellano violated four conditions of his supervised release. The SRVR recommended revocation of Perez-Arellano's supervised release and imposition of a 24-month sentence of imprisonment "to be served consecutive to any term of imprisonment previously imposed."[2] At the sentencing hearing, the district court found that Perez-Arellano had committed three of the four alleged violations of his supervised release.

In imposing its sentence of incarceration, the record indicates that the district court considered several of the factors listed in § 3553(a), including the nature and circumstances of Perez-Arellano's supervised release violations, Perez-Arellano's history and characteristics, the seriousness of the offenses, the need to deter criminal conduct and protect the public, Perez-Arellano's demonstrated unwillingness and inability to conform

---

[2] Because one of the supervised release violations was a Grade A violation as defined in U.S.S.G. § 7B1.1(a), it was used to compute his recommended sentence under the sentencing guidelines in accordance with the provisions of § 7B1.1(b). Consequently, because of the Grade A violation and a criminal history category of IV, the recommended guideline range of imprisonment was twenty-four to thirty months. *See* U.S.S.G. § 7B1.4(a).

his behavior to the law, and his demonstrated unwillingness and inability to follow the conditions of his supervised release. Furthermore, the district court considered the recommended sentence under the guidelines, and, in any event, "[b]y reviewing the supervised release violation report, the court is presumed to have considered the recommended sentencing range set forth in the policy statements." *McClellan*, 164 F.3d at 310.

Under the circumstances, the record reflects sufficient consideration of the relevant statutory factors to permit this Court to conclude that the district court's revocation of Perez-Arellano's supervised release and imposition of a 24-month sentence of imprisonment – the floor of the guideline range – was not plainly unreasonable. *See id.*; *Washington*, 147 F.3d at 491-92. To the contrary, given the incessant and egregious nature of the violations, it is clear that the sentence imposed was both procedurally and substantively reasonable.

**B.     Sentence for Illegal Re-entry Conviction**

The United States Sentencing Guidelines are advisory rather than mandatory, such that a district court's application of the guidelines to a particular defendant's sentence is discretionary. *See United States v. Booker*, 543 U.S. 220, 245-46, 263-65 (2005); *United States v. Davis*, 397 F.3d 340, 345-46 (6th Cir. 2005). The sentence ultimately imposed by the district court is reviewed by this Court for reasonableness. *See Booker*, 543 U.S. at 261-65; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Nevertheless, district courts are required to consult the guidelines prior to the imposition of a sentence and "sentences properly calculated under the Guidelines" are credited with "a rebuttable

presumption of reasonableness." *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Booker*, 543 U.S. at 259-60, 264.

The reasonableness of a sentence is determined by reference to the factors listed in 18 U.S.C. § 3553(a). *See Booker*, 543 U.S. at 259-60, 264; *United States v. Chandler*, 419 F.3d 484, 486-88 (6th Cir. 2005); *Webb*, 403 F.3d at 383. While the district court need not "'engage in a ritualistic incantation of'" the factors set forth in § 3553(a), the sentence imposed by the district court should reflect consideration of those factors. *Chandler*, 419 F.3d at 488 (citation omitted). The sentence ultimately imposed must be "'sufficient, but not greater than necessary, to comply with the purposes' set forth in" § 3553(a). *United States v. Foreman*, 436 F.3d 638, 643 (6th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Perez-Arellano pled guilty to illegally re-entering the United States following deportation for an aggravated felony conviction. The presentence report (PSR) determined that Perez-Arellano's base offense level was 8 under the 2003 version of U.S.S.G. § 2L1.2(a). The base offense level was then increased by another 8 points, under § 2L1.2(b)(1)(C), because Perez-Arellano's prior state conviction for possession of a controlled substance was believed to constitute "an aggravated felony as described in 8 U.S.C. § 1101(a)(43)(B)." As a result, Perez-Arellano's adjusted offense level was calculated at 16. The PSR subsequently decreased Perez-Arellano's offense level by 3 points, under U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility, to arrive at a total offense level of 13. Because the PSR determined that Perez-Arellano had 9 criminal history points, he was placed in criminal history category IV. With a total offense level of

13 and a criminal history category of IV, the federal sentencing guidelines recommended a sentence range of 24 to 30 months of imprisonment.

During the sentencing hearing, the district court considered Perez-Arellano's objection to the 8 point increase in his offense level based upon the PSR's determination that his prior conviction for possession of a controlled substance was "an aggravated felony." The district court sustained Perez-Arellano's objection and concluded that his drug possession offense "does not constitute an aggravated felony and does not warrant an eight-level increase in his offense level." Since the conviction was a felony, however, the court found that it "would authorize a four-level increase" in Perez-Arellano's offense level. The district court's ruling resulted in a reduction in Perez-Arellano's total offense level from thirteen to nine and, with a criminal history category of IV, reduced Perez-Arellano's recommended sentence under the guidelines to 12 to 18 months of imprisonment.

Acknowledging the advisory nature of the federal sentencing guidelines, the district court sentenced Perez-Arellano to serve 18 months of imprisonment to run consecutively to his sentence for violating conditions of his supervised release. Review of the entire sentencing transcript in this case reveals that the district court treated the sentencing guidelines as an advisory tool,[3] considered the factors set forth in § 3553(a) to permit an informed appellate review by this Court, and examined "all the relevant information" presented to it when imposing sentence. *See Webb*, 403 F.3d at 385. Specifically, the

---

[3] Although *Booker* had not yet been decided when the district court sentenced Perez-Arellano, the record clearly demonstrates that the district court treated the federal sentencing guidelines in an advisory capacity. In fact, when referencing the sentencing guidelines as recommendations rather than mandatory rules, the district court stated that "the guideline is now what it says it is, a guideline and does not bind the judge."

district court considered: (1) the nature and circumstances of Perez-Arellano's offense; (2) his background and criminal history; (3) the appropriate punishment for Perez-Arellano, as well as the recommended sentence under the guidelines; and (4) the need for rehabilitation by ordering his participation "in a program of testing and treatment for substance abuse" during his supervised release period.

Even though the district court did not recite the § 3553(a) factors, which was inevitably the result of the pre-*Booker* posture, no such recitation was required. *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006); *Williams*, 436 F.3d at 708-09. Instead, the sentence imposed by the district court need only reflect consideration of the § 3553(a) factors to facilitate an informed appellate review. *Richardson*, 437 F.3d at 554; *Williams*, 436 F.3d at 708-09; *McClellan*, 164 F.3d at 310. It is clear from the sentencing transcript that the district court provided a more-than-adequate articulation of the court's reasons for the sentence imposed, most of which directly but not explicitly implicated the § 3553(a) factors, to such an extent as to "permit reasonable appellate review" by this Court. *Id.*; *see also United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). Furthermore, the record demonstrates that the district court adequately addressed and took into account Perez-Arellano's proffering of allegedly mitigating evidence and his objections to the PSR, which resulted in a reduction of his base offense level.

Accordingly, because the district court's sentence within the guideline range is afforded a presumption of reasonableness, and Perez-Arellano has failed to demonstrate that the district did not sufficiently consider the statutory factors or that the sentence is otherwise substantively unreasonableness, the sentence imposed by the district court is

upheld as reasonable under the circumstances. *See Booker*, 543 U.S. at 261-65; *Foreman*, 436 F.3d at 643; *Chandler*, 419 F.3d at 486-88.

### III.   CONCLUSION

In accordance with the foregoing analysis, we affirm Perez-Arellano's sentences for both the illegal re-entry conviction and the supervised release violations as reasonable and not plainly unreasonable, respectively.