NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0083n.06

No. 15-2425

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 30, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHARLES GAHAN, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     KEITH, BATCHELDER, and CLAY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Defendant Charles Gahan appeals the district court's sentencing decision as procedurally and substantively unreasonable.  For the following reasons, we AFFIRM the district court's sentencing decision.

I.

In 2002, Charles Gahan co-owned and operated a real estate development company called GBW Development.  From late 2002 to 2006, Gahan conspired with Scott Hoeft, an independent title insurance and closing agent operating under the name of Prime Title Services, LLC.  As stipulated in Gahan's plea agreement, Gahan and Hoeft diverted proceeds from real estate closings to Gahan's business and personal bank accounts instead of to the financial institutions and private lenders who should have received the proceeds to retire their existing liens.  As a result of this scheme, Old Republic National Title Insurance and First American Title

Insurance, two companies on behalf of which Hoeft was authorized to issue title insurance policies, were forced to defend the innocent purchasers and pay off their existing liens to ensure that the purchasers had clear title to their homes. By the time the scheme was uncovered, Old Republic and First American suffered a total loss of approximately $8,691,834.90

On February 12, 2015, Gahan was indicted in the U.S. District Court for the Western District of Michigan on a single count of conspiracy to commit wire fraud affecting financial institutions, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1349. Gahan pleaded guilty pursuant to a plea agreement. The Presentence Investigation Report ("PSR") assigned Gahan a total offense level of 28 and a criminal history category of I. The PSR indicated that the resulting guideline sentencing range was 78 to 97 months and recommended a sentence of 78 months. But, in anticipation of the forthcoming November 1, 2015, amendments to the guidelines, the PSR noted that Gahan's total offense level would be lowered to 26, with a guideline range of 63 to 78 months.

At Gahan's sentencing hearing, the district court noted that due to the amendments to the sentencing guidelines, Gahan was entitled to the two-level reduction in his total offense level. The district court also acknowledged the new corresponding guideline range of 63 to 78 months. Neither party objected to the PSR or the calculations contained therein, and the court ultimately sentenced Gahan to a within-guidelines sentence of 70 months' imprisonment. This appeal followed.

## II.

We generally review a district court's sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011). Substantive-reasonableness claims, which are always reviewed for an abuse

of discretion, need not be raised before the district court to be preserved for appeal. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008). "But 'if a sentencing judge asks . . . whether there are any objections not previously raised, in compliance with the procedural rule set forth in *United States v. Bostic*, 371 F.3d 865 (2004)[,] and if the relevant party does not object, then plain-error review applies on appeal to those' procedural-reasonableness arguments that were not preserved in the district court." *Lanning*, 633 F.3d at 473 (quoting *Penson*, 526 F.3d at 337) (alterations in original). Because Gahan did not object at his sentencing hearing, plain-error review applies to his procedural-reasonableness arguments.[1]

Gahan argues that his sentence was both procedurally and substantively unreasonable due to the trial court's alleged failure to recognize that the sentencing guidelines are advisory and the district court's alleged subsequent failure to provide an individualized assessment of the 18 U.S.C. § 3553(a) sentencing factors.

A.

"Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (citation and internal quotation marks omitted). Gahan's primary contention on appeal is that the district court treated the guidelines as mandatory. His only support from the record is an exchange between Ronald Stella, the government's attorney, and the district court during the sentencing hearing:

---

[1] Despite his failure to object at sentencing, Gahan argues that we should review his procedural-reasonableness argument for an abuse of discretion rather than for plain error. He argues that because at least one party, the government, raised a procedural issue (*i.e.*, sentence disparity between co-defendants), we should review his sentence for an abuse of discretion. This court's precedent is clear, however: it is the "relevant party" that must object in order for the abuse-of-discretion standard to apply to claims of procedural unreasonableness. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008) (citing *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)). Because the government is not the party appealing the sentence, we review his procedural-reasonableness claim for plain error.

MR. STELLA: One thing I did want to cover just very briefly. An issue of sentencing disparity was raised in the defense's filing. It wasn't brought up here today, but I wanted the Court to understand what did happen with the co-defendant, Mr. Hoeft.

Ironically, they [Hoeft and Gahan] ended up at the same exact point under the guidelines, Your Honor. Mr. Hoeft was sentenced under the old guidelines and he ended up at an offense level of 31 just like Mr. Gahan would have before acceptance of responsibility which made him a 28, and then he received a two-level 5K for his cooperation before he was sentenced. So he ended up at a 26 and he had the same guideline range that Mr. Gahan ends up at today of 63 to 78 months.

He subsequently received a Rule 35 because he came back to our office after sentencing and helped us prepare the case against Mr. Gahan and testified in grand jury. So he ultimately ended up at 45 months, but I just wanted the Court to be aware that in terms of the guidelines, they do not end up at exactly the same guideline range.

THE COURT: Except that the government by virtue of the guidelines gets to manipulate the process, don't they?

MR. STELLA: We don't manipulate, Your Honor.

THE COURT: Well, you run the guidelines up. You ask me for 5K1s.

MR. STELLA: Well, that's not a manipulation of the guidelines with all due respect, Your Honor. That is rewarding someone who has recognized a responsibility and is willing to stand up and help us convict another person.

THE COURT: It is. It is. It is.

MR. STELLA: Yes, it is.

THE COURT: But in fact it drives the ultimate sentence because we all know what happens.

MR. STELLA: *That's the Court's choice under 3553. They're nonbinding guidelines, Your Honor.*

THE COURT: *No, it's not.*

MR. STELLA: I don't want to argue with the Court, but—

THE COURT: *Well, I respectfully disagree with you.* All you have to do is start looking at some of these Court of Appeals decisions that are coming down. They're coming down very strictly on guidelines and very strictly on whether or not courts grant government's motions, and the judge better grant the motion and *the judge better stay somewhere near the guidelines*. Isn't that the message that we're getting now?

This interchange, by itself, does *not* demonstrate that the district court believed the guidelines are mandatory. *See, e.g.*, *United States v. Highgate*, 521 F.3d 590, 596 (6th Cir. 2008) (reversing a within-guidelines sentence that the district court thought was inconsistent with "justice, morality, and all of the other considerations under 3553," but which it nevertheless felt obliged to impose under the guidelines); *United States v. Martinovich*, 810 F.3d 232, 243-44 (4th Cir. 2016) (reversing a district court that expressly, and repeatedly, stated the guidelines were "not discretionary" but "mandatory"). If anything, the district court's comments in this case indicate its belief that this court too frequently reverses sentences which deviate from the guidelines. We can therefore find no plain procedural error in Gahan's sentence.

B.

When reviewing a district court's sentence, this court must determine "whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010) (internal quotation marks omitted). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). Because Gahan's sentence fell within the guidelines range, we presume that his sentence is substantively reasonable. *See Lanning*, 633 F.3d at 473.

Notwithstanding this presumption, Gahan argues that the district court erred by not addressing the § 3553(a) factors—specifically factor (6), sentence disparities among defendants with similar records who have been found guilty of similar conduct. Gahan primarily cites *United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), in which this court vacated a sentence and remanded for resentencing because the district court did not sufficiently address § 3553(a)(6) after the defendant

had raised the issue.[2]  *Id.* at 805-06.  In the present case, Gahan raised a § 3553(a)(6) sentence disparity argument in his sentencing memorandum.  However, despite the fact that the government began to rebut this argument at the sentencing hearing, Gahan failed to discuss the issue further— effectively resting on his memorandum.  He also neglected to respond to the government's contention that both Gahan and Hoeft were initially sentenced using the same guidelines range. Thus, it is uncertain whether the sentencing disparity issue was clearly presented and in dispute at sentencing.  *See United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009) ("[A]s a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute.").

Furthermore, when presented with a response to Gahan's sentence disparity argument by the government at the sentencing hearing, the district court interrupted to assert that "it makes no difference in this case because of all the previous motions that [the government] had of cooperation versus this individual [Gahan] who comes in late.  Really makes no difference to me."  We interpret this statement to mean that the district court found Gahan's § 3553(a)(6) sentence disparity argument irrelevant as a result of the previous motions related to Hoeft's cooperation in the subsequent prosecution of Gahan.  This interpretation of the transcript is strengthened by the fact that, at the time of each co-defendant's sentencing, the disparity between Hoeft's sentence and Gahan's sentence was only seven months.[3]  This disparity is markedly different from the disparity in *Wallace*, in which the defendant received more than twice the sentence despite being the "less-involved" party in the commission of the crime.  *Wallace*, 597 F.3d at 803, 805.  Altogether, and unlike *Wallace*, in which "no part of the record ma[de] clear that the district judge even understood Defendant's argument," *id.*

---

[2] Although this court stated in *United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), that "[a] district judge is not required to consider the disparity between the sentences of co-defendants," "[w]hen a defendant raises a particular[, non-frivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Wallace*, 597 F.3d at 803 (citations omitted).

[3] After being initially sentenced to 63 months of incarceration, Hoeft was granted a discretionary Rule 35 sentence reduction for providing substantial assistance in the prosecution of Gahan. *See* Fed. R. Crim. P. 35(b).

at 806, the record in this case sufficiently illustrates that the district court understood and rejected Gahan's § 3553(a)(6) sentence disparity argument.

Gahan also makes much of the requirement that district courts state their reasoning for the sentence imposed. *See Rita v. United States*, 551 U.S. 338 (2007). In addition to our prior holding that "[t]here is no requirement that the district court . . . engage in a ritualistic incantation of the § 3553(a) factors it considers," *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (citations and internal quotation marks omitted), the record in this case contains sufficient evidence for us to find that the district court did not abuse its discretion here. The only requirement is that "the district court's sentence should nonetheless reflect the considerations outlined in § 3553(a)." *Id.* (citation omitted). Although the district court did not explicitly mention the § 3553(a) factors, we believe the sentencing transcript sufficiently demonstrates the court's having considered the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentence and the sentencing range established, and the need to provide restitution to any victims of the offense. Given this evidence, we cannot say that the district court abused its discretion in imposing Gahan's sentence.

III.

Upon review of the record, we find that Gahan's sentence is neither procedurally nor substantively unreasonable. We AFFIRM his sentence.

**CLAY, Circuit Judge, concurring.** I agree with my colleagues that Defendant's sentence must be affirmed, and I concur fully in the Court's opinion. I write separately to highlight several remarks made by the district court at Defendant's sentencing hearing that may have created confusion, and explain how those remarks unnecessarily complicated our review in this appeal.

At the sentencing hearing, counsel for the government attempted to respond to Defendant's argument that he should receive a downward departure so that there would not be an unwarranted disparity between his sentence and the sentence received by his co-defendant. After the prosecutor finished speaking, the district court accused the government of manipulating the calculation of Defendant's sentencing guidelines range, leading to the following exchange:

MR. STELLA: We don't manipulate, Your Honor.

THE COURT: Well, you run the guidelines up. You ask me for 5K1s.

MR. STELLA: Well, that's not a manipulation of the guidelines with all due respect, Your Honor. That is rewarding someone who has recognized a responsibility and is willing to stand up and help us convict another person.

THE COURT: It is. It is. It is.

MR. STELLA: Yes, it is.

THE COURT: But in fact it drives the ultimate sentence **because we all know what happens.**

MR. STELLA: That's the Court's choice under 3553. They're nonbinding guidelines, Your Honor.

THE COURT: *No, it's* [sic] *not.*

MR. STELLA: I don't want to argue with the Court, but—

THE COURT: **Well, I respectfully disagree with you. All you have to do is start looking at some of these Court of Appeals decisions that are coming down. They're coming down very strictly on guidelines and very strictly on whether or not courts grant government's motions, and the judge better grant the motion and the judge better stay somewhere near the guidelines. Isn't that the message that we're getting now?**

(R. 45, Sentencing Tr., at 23–26 (emphasis added).)

-8-

Defendant argues that this exchange shows that the district court treated the sentencing guidelines as *de facto* mandatory in violation of *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. However, viewing the transcript in its entirety, I agree with the majority that the district court was likely just indicating "its belief that this court too frequently reverses sentences which deviate from the guidelines." Maj. Op. at 5. The district court thoroughly considered the nature and circumstances of Defendant's crime, as well as his history and characteristics, and nothing in the transcript clearly demonstrates that the district court failed to appreciate the extent of its sentencing discretion.

Nevertheless, some of the district court's comments create an unnecessary distraction, and muddy the transcript for appellate review. As an appellate court confined to reviewing a cold transcript, it is often difficult for us to discern whether a district court is speaking tongue-in-cheek, or has legitimately misapplied the law when it makes comments suggesting that the guidelines are *de facto* mandatory. Federal appellate courts have vacated sentences for comments not considerably different than those uttered by the district court here, despite the remote likelihood that any district judge still believes that the guidelines are *literally* mandatory twelve years after *Booker*. *See, e.g.*, *United States v. Highgate*, 521 F.3d 590, 596 (6th Cir. 2008); *United States v. Martinovich*, 810 F.3d 232, 243-44 (4th Cir. 2016).

The district court may well have been correct that this Court is often too willing to find an abuse of discretion when reviewing federal sentences. However, district courts must remember that *Booker* is still binding law, and no decision or decisions of this Court have held or implied that district courts must necessarily "stay somewhere near the guidelines." It is better for all concerned if district courts stick to considering the § 3553(a) factors and other relevant indicia in conducting sentencing hearings, and resist the temptation to editorialize about the perceived implications of this Court's sentencing case law.